Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

UNITED STATES DISTRICT COURT
for the
Southern District of Georgia
_____ Division

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2023 APR 18 P 3:04
CLERK_____
S. DIST. OF GA.

| | | |
|---|---|---|
| Lisa Y. Harper | ) | Case No. CV423 104 |
| | ) | (to be filled in by the Clerk's Office) |
| *Plaintiff(s)* | ) | |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) ) ) ) | Jury Trial: *(check one)* ✓ Yes ☐ No |
| -v- | ) | |
| Honorable Christine E. Wormuth, Secretary of the Army | ) ) ) | |
| *Defendant(s)* | ) | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) ) | |

## COMPLAINT FOR A CIVIL CASE

I. The Parties to This Complaint

   A. The Plaintiff(s)

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Lisa Y. Harper |
   | Street Address | 202 Pineview St |
   | City and County | Hinesville (Liberty County) |
   | State and Zip Code | Georgia 31313 |
   | Telephone Number | 912-432-9295 |
   | E-mail Address | harper3169@hotmail.com |

   B. The Defendant(s)

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Honorable Christine E. Wormuth    (See Attached) |
| Job or Title *(if known)* | Secretary of the Army, Department of the Army, Equal Employment |
| Street Address | 5825 21st Street Building 214, Room 129 |
| City and County | Fort Belvoir, |
| State and Zip Code | VA 22060-5921 |
| Telephone Number | Fax No. (703) 805-8722 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question        [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Title VII, Age discrimination in Employment Act (ADEA), and the Rehabilitation Act of 1967 section 501.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

    The plaintiff, *(name)* Lisa Y. Harper, is a citizen of the State of *(name)* Georgia.

    b. If the plaintiff is a corporation

    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b. If the defendant is a corporation

The defendant, (name) Honorable Christine E. Wormuth , is incorporated under the laws of the State of (name) Georgia , and has its principal place of business in the State of (name) DC .

Or is incorporated under the laws of (foreign nation) ,

and has its principal place of business in (name) The Department of the Army .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

$10,000.00 Attorney Fee's.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

On May 07, 2019 I began having spasms in my neck with pain radiating down my right arm, and right hand pain. My shift at this time was 6:30AM-3:30PM so I went to Occupational Health at the end of my shift for guidance with treatment. I was instructed to let my supervisor know and complete a CA-2. I went to my Primary Care Physician Dr. Bannout on May 30, 2019. I was restricted from using my Right arm at work. Had a follow up appointment on June 02, 2020, referred to a Neurologist, Dr. Callaghan DO, an Orthpedic specialist, Dr. Kolovich, and a Neurosurgeon Dr. Sarzier. On July 10, 2019 I had an MRI that showed severe disc herniation in my neck. My Primary Care Provider (PCP) wrote a slip for me to be off for 10 day's. (see attached):

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

(1) Lost wages May 20, 2020-Now $171,747.00, (2) I would like to buy back my time, to include my cost-of-living increases, (2) TSP replacement, (3) Retirement with healthcare benefits, (4) reimburse my attorney fees and (5) Accountability on the Agency.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 04/14/2023

Signature of Plaintiff
Printed Name of Plaintiff    Lisa Y. Harper

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

Lisa Y. Harper

Attachment: Defendant No. 1

The Honorable Christine E. Wormuth,
Secretary of the Army
Department of the Army
Equal Employment Opportunity Compliance and Complaints Review
ATTN: SAMR-EO-CCR
5825 21st Street
Building 214, Room 129
Fort Belvoir, VA 22060-5921
Fax No. (703) 805-8722

Mailing Address:
Secretary of the Army
101 Army Pentagon
Washington, DC 20310-0101

Lisa Y. Harper

### III. Statement of Claim Continued

On July 10, 2019, after receiving my MRI report, I was noted to have 2 herniated discs in my neck. A large herniation of my C4-5 and C5-6. See MRI results Exhibits 1A and 1B. This condition causes me to have pain and spasms in my neck. The pain radiates down my Right Arm and limits my range of motion. This is a new condition that began after working at Fort Stewart. I have intermittent flare ups, that require me to take muscle relaxants for spasms and Ibuprofen as needed for pain. Also, I've had two steroid injections in my neck SEE EXHIBITS 2A, 2B and physical therapy. This condition will affect me for the rest of my life. I was also diagnosed with deQuervains Tenosynovitis in both hands June 2019 for the right hand and February 2020 for the left hand. I was denied FMLA. SEE EXHIBITS 3A-3F, 4A-4G. I submitted three reasonable accommodation requests; SEE EXHIBITS 5A, 5B, 5C, they all timed out exceeding the 30-day time frame allotted by The Army Regulation AR 690-12 regulations Section C-2 through C-5. SEE EXHIBITS 6A-6D.

Ms. Melanie Bell, RN Supervisor denied me FMLA twice, Reasonable Accommodations, time off for surgery and requested I be removed from my position as an LPN at Hawks Troop Medical Clinic at Fort Stewart GA. She and Ms. Colon manipulated and altered documentation given by the EEO Specialist Mr. Frazier. SEE EXHIBITS 7-10. This document would have allowed me to see a Federal Medical Officer at Winn Army Hospital at no cost to me. This manipulation caused me to have out-of-pocket expenses, which caused me financial hardship. Additionally, I was forced to use all my leave time because my workers comp was denied. Ms. Bell was aware of this. SEE EXHIBIT 68. If I was approved FMLA, I would have had the 12 weeks it allots to attend these appointments.

### Claim 1. Denial of FMLA

On July 11, 2019, Ms. Bell sent me a text message regarding my leave slip submitted to July 10, 2019, stating: "Good Morning Ms. Harper, I'm sorry I missed your call yesterday. I did receive your doctor's excuse. However, I heard back from CPAC your work excuse does not meet the requirements according to 5 CFR 339.104". SEE EXHIBITS 11A, 11B, 69A, 69B. This document was emailed to Ms. Bell from Ms. Colon, Human Resources/ Labor Relations Specialist. When I went to see Ms. Bell regarding this policy, I observed her go to her computer, copy and paste the 7 statements, to create a document for me to take to my provider. I thought she was going to show me versus print them out. When I began to walk toward her desk, she turned her monitor and stated "I can't show you guys what Ms. Colon sends me." She printed it out with no letter head. I also used this same document for Dr. Sarzier on November 11, 2019.

Prior to going to my PCP to get another work excuse, I printed out an electronic copy of my patient care summary which has (1) the date of my visit, (2) PCPs electronic signature, (3) reason for visit (right wrist pain; neck pain) (4) Assessment and Plan, which includes the diagnosis (Cervical Radiculopathy) and Plan Ibuprofen 800mg (I don't want anything stronger.) and a referral to the Neurosurgeon. On the second page Plan #2 says follow up in 4 weeks. I took this to Ms. Bell and gave her a copy, but it was not accepted. SEE EXHIBITS 70A, 70B. (There's a black line across it because I covered my other PHI with a piece of paper.) I asked Ms. Bell if we could have a meeting regarding my leave request. She said she had to get with Ms. Colon and Labor Relations and see what day and time would be good for them. I stated "okay, in the meantime, I will try to get more information." I went to see my PCP on July 12, 2019, to get more information as Ms. Bell requested.

He stated, "I will give her the information she wants, but I want you to go on FMLA. I don't know what you're going to do, but what they are doing is illegal. I don't know who you need to talk to, but you meet the criteria for FMLA, so I want you to go on it." I attempted to contact Ms. Bell but could not reach her, so I contacted Mr. Oliver in Human Resources to request the paperwork for FMLA. Mr. Oliver explained the process to me and emailed forms WH-380-E and WH-381. He also cc'd me in the email so I would have a copy of it too. SEE EXHIBITS 12-24.

I went to Ms. Bells office to discuss going on FMLA, she said, "Are you serious?" I stated yes, Mr. Oliver has emailed you the paperwork. She asked how I knew he sent it to me? I stated, because I asked him to, and he cc'd me as well. She printed out the form I needed to get started and stated that if I don't come in on Monday, July 15, 2019, you will be marked AWOL. On July 15, 2019, I returned the FMLA packet to Ms. Bell RN, she began to review it and stated she saw inconsistent information, so she was going to have Ms. Colon review it, and she will let me know what other information was needed. July 17, 2019, Ms. Bell sent me a text telling me she was going to be out of the building this afternoon, and directed me to see Major Jenkins now Lt. Col Jenkins, she had my paperwork. I was denied. Ms. Bell used expired form WH-382 EXHIBITS 3B, 4C, which was not sent by Mr. Oliver. SEE EXHIBITS 22, 23. The events with Ms. Bell and Ms. Colon did not cease until I was terminated by Captain Kowalski, now Major Kowalski on May 20, 2020. April 14, 2020, Ms. Bell came to me and informed me that she was asking Captain Kowalski to remove me from my position; for inability to do my job. SEE EXHIBITS

**Claim 2. Denial of Reasonable Accommodations**

In addition to denying me FMLA, I was also denied Reasonable Accommodations. Ms. Bell and Ms. Colon attempted to manipulate the facts to make it seem as if I did not provide sufficient documentation/insubordinate. She prolonged the 30-Day RA process as outlined by Army Regulations AR 690-12 regulations section C-2, C-3, C-4, C-5, by unnecessarily requesting additional "medical documentation". Even after EEO Specialist, Mr. Frazier, told Ms. Bell that I submitted "Sufficient" paperwork. Captain Duffy requested a Dragon speak Talk-text device; giving me a dragon speak would alleviate strain on the tensynovitis in my right hand. Ms. Bell stated, "Can't she type with one hand?" "Her co-workers are helping her." SEE EXHIBIT 71.

Ms. Bell and Ms. Colon attempted to manipulate the facts and make it appear as if I was not bringing in the proper information. With the continuous interference, it was evident to me that Ms. Bells goal was to fire me. In November 2019, she received documents from Ms. Colon to remove me from my position. Again, in January 2020 it was revisited; and on April 14, 2020, she followed through and initiated it. SEE EXHIBITS 25-38 The whole process was strategically planned to be finalized around the time I was scheduled to have my surgery and return to work. SEE EXHIBIT. These ladies were very manipulative and calculating with their own agenda and it was not to let me be successful at Fort Stewart GA.

**DISCRIMINATION/RETALIATION/EXACERBATION OF MEDICAL CONDITIONS**
The delay and partial compliance to my Ergonomic Assessment caused progression/aggravation of my condition. Per the January Ergonomic Assessment SEE EXHIBITS 72A-72C, it was determined my work environment was not conducive to my condition; therefore, a dragon speak, and headset was required. Previously on September 13, 2019, Captain Duffy requested Dragon Speak a talk-text device that would alleviate the strain on both hands and the tensynovitis. Dr. Bannout gave me two weeks' sick leave, due to my left hand being affected now. An Electromyography (EMG) was ordered, and completed on February 24, 2020. My work excuse was faxed to Ms. Bell on February 28, 2020. Ms. Bell denied

Lisa Y. Harper

Denial of Reasonable Accommodation Timeline

June 13, 2019, I was working in In/Out Processing. There were 3-4 other employees in this area. My co-workers asked if I was going to be getting my own laptop so I can update the SMs information in the computer. I emailed Ms. Bell and she stated there weren't any computers available and I would only be there temporarily.

June 18, 2019, I completed the APPENDIX B (Request for Reasonable Accommodations) because of my doctor's order not to use my right arm at work. SEE EXHIBIT 5A.

August 12, 2019, I completed an APPENDIX B and was more specific with accommodations. SEE EXHIBIT 5B.

August 14, 2019, I completed another APPENDIX B and added my diagnosis. SEE EXHIBIT 5C.

August 22, 2019, I received an email from Mr. Frazier stating that he has tried contacting me several times in reference to my reasonable accommodation; due to me being locked out of my room for several weeks I didn't get a call from him.

August 26, 2019, once again I requested a sit stand desk, a blood pressure cuff that I wouldn't have to wrap around a Service Members arm. I submitted the medical documentation requested by Mr. Frazier and Ms. Bell, from my Neurologist which provided more information regarding my health condition (large disc herniation at C4-5 to the right with correlate with her pain as well as disc herniation at C5-6.) SEE ATTACHED 74A,74B. Also, I informed them that I was scheduled to have surgery on my hand on October 15, 2019. Mr. Frazier stated this was enough medical documentation for him, regarding my accommodation; but Ms. Bell wanted more information. SEE EXHIBIT 71

September 13, 2019, there was an EEOC meeting regarding my Reasonable Accommodation request. Captain Colin Duffy suggested giving me a dragon speak (talk text device). Ms. Bell stated she is receiving assistance from coworkers, can employee type with one hand. My co-workers weren't helping me. Mr. Frazier was satisfied with the medical documentation provided, but again Ms. Bell wanted further documentation. SEE EXHIBIT 71

September 26, 2019, after being out sick for 3 days, I returned to work and was called into a meeting with Ms. Bell, Captain Kowalski and Sgt Ocenar. I was given an interactive process. The reason I was out sick for 3 day's was due to a possible Kidney stone. Prior to this I wasn't out for more than three days due to cervical radiculopathy. So, I didn't understand why I was receiving this. I completed the reasonable accommodation request like I was instructed to do, I submitted more medical documentation on August 26, 2019, from the Neurologist explaining my condition, (Herniated disc in my neck with radicular pain.), I requested items that I thought would help me and I kept her informed via email about when I had doctors appointments. SEE ATTACHMENT 75A-75F, 99A, 99B.

It's my understanding that the interactive process begins when the employee informs the supervisor of their need for accommodation due to a medical problem and what the problem is. She says I didn't respond to it, but I was already interacting with her to the best of my ability. This situation was becoming very contentious. I also think that this was a stall tactic because this was the 30-day deadline for me bringing in my medical documentation and a decision should have been made.

On October 2, 2019, I followed up with Mr. Frazier asking if there was an update regarding my RA request and asked if he needed any more medical documentation, he stated he did not need any more at this time. At 2:37 PM He emailed Ms. Bell stating "Have you made a decision regarding Ms. Harpers accommodation? We've had our RA Council meeting and recommendations. Please contact me with your decision so that I can close this accommodation." SEE EXHIBITS 76, 77

On October 3, 2019, I asked Mr. Frazier about getting an Ergonomic assessment to help determine what accommodations I need. He responded in an email stating he would provide the information to my supervisor (Ms. Bell). SEE EXHIBITS 76, 78

On October 4, 2019 @ 09:30 AM Mr. Frazier, our Equal Employment Opportunity Specialist, emailed Ms. Bell and gave her the information to schedule an Ergonomic Assessment with Industrial Hygiene, which did not happen. SEE EXHIBITS 73, 74

October 7, 2020, Ms. Bell received an email from Mr. Frazier regarding her request for more medical documentation from me and told her she has 7 days from the day she receives this correspondence to give the document to me and receive the requested documentation. SEE EXHIBITS 7, 8

On October 8, 2019, Prior to me receiving the form Ms. Bell sent it to Ms. Colon. At 08:25 AM Ms. Colon tweaked the form and removed number 4. SEE EXHIBITS 9A, 9B and returned it to Ms. Bell. Ms. Bell added number four. SEE EXHIBITS 10A, 10B I had a meeting with her and Major Jenkins, Ms. Bell stated she was giving ne another request for medical documentation for RA because my other request/documentation expired. I acknowledged receiving it and stated to her then, that I would have to schedule more doctor appointments and I don't know if I will have this documentation by October 17, 2019.

October 29, 2019 @ 10:16 Mr. Frazier emailed Ms. Bell stating ("Please see attached Appendix E, a decision must be made concerning Ms. Harper. This has gone past the 30 days required for this accommodation.") SEE EXHIBIT 39

On October 30, 2019, Ms. Bell denied my request for Reasonable Accommodations stating the accommodation would require the removal of one or more essential job functions. This was not true. From August 16, 2019 -October 18, 2019, at least 13 out of 17 of those days I was the only nurse working with my provider Mr. Alden. I performed my own vitals unless a blood pressure was high. If a blood pressure was high, I would have another nurse, or the provider recheck it. I also completed my own data entry, without assistance from anyone. If my provider had a procedure and I was caught up, I would assist him with his procedure. A Dragon Speak would have been very helpful. I would go home everyday in pain. Eventually, I began to see a therapist. (I HAVE DOCUMENTS IF NEEDED.)

When it comes to providing medical documentation for Reasonable Accommodation it seems the only person who had an issue with it was Ms. Bell. She stalled and extended the timeframes to bring in medical documentation to suit herself. It's evident to me that her foot was being held to the fire, because Mr. Frazier had a job to do and a deadline to meet. In turn Ms. Bell would turn up the heat on me, to make herself appear like she was trying to do right by me, and I was being obstinate and not cooperating. She was given what she needed on August 26, 2019, and did not accept it. Due to her stall tactics, and her willful desire to disregard my medical documentation, my condition exacerbated. SEE EXHIBITS 74A, 74B.

November 11, 2019, at my appointment with Neurosurgeon Dr. Sarzier I gave him the 7 questions Ms. Bell gave me, "This information may include, but is not limited to, the following." I asked if he could answer them for me. I was in Ms. Bells office with her when she cut and pasted them from a document Ms. Colon sent her. When I started to walk toward her, she turned her monitor and stated you guys can't see the documents Ms. Colon sent me. At this time, I was given a referral for Physical Therapy. When I reported to work on November 12, 2019, I gave a copy of this document to Ms. Bell. SEE EXHIBITS 69A, 69B After she went back to her office and looked it over, she came back to my room and asked me if there was anything else I wanted to give her.

After she denied my reasonable accommodations, I was informed by a co-worker that I could go to Occupational Health and request an Ergonomic Assessment myself. I contacted Jacqueline Gorham Occupational Health Nurse, Department of Preventive Medicine on January 06, 2020, and scheduled an Ergonomic Assessment. The assessment was completed on January 08, 2020. I explained some of my symptoms to Mr. Williams and he also showed me some techniques that helped.

Mr. Williams gave me a copy of the assessment and forwarded a copy to Ms. Bell. I reached out to Ms. Bell on January 24, 2020, SEE ATTACHMENT to confirm she received a copy of the assessment. She forwarded the email and a copy to SSG Ocenar and another officer who already out processed. I reached out to SSG Ocenar February 4, 2020. SEE EXHIBITS 72A, 72B, 72C

On February 6, 2020, I contacted Mr. Williams regarding an update on my equipment SEE ATTACHMENT February 13, 2020, I was excused from work for 2 weeks due to the exacerbation of my condition, a nerve conduction study was ordered. On February 28, 2020, my PCPs office faxed over my work excuse, stating my Ergonomic Equipment must be set up SEE EXHIBITS 48-52 When I returned to work on March 2, 2022, I still did not have any equipment. SEE PICTURE Ms. Bell gave me the number for Mr. Jackson. I had to call him and schedule a time with him to set up my dragon speak. My co-worker became upset because I was not screening patients. I made my co-worker aware of what I was doing, she became upset because I wasn't screening and complained to Ms. Bell. Ms. Bell told her to write a complaint. I also informed Ms. Bell that I had to have surgery, which became another issue. SEE EXHIBITS 104-107 After finally receiving my equipment, I began to have some pain relief. I felt my productivity at work was improving, but April 14, 2020, Ms. Bell came to me and stated she was going to be asking Major Kowalski to remove me from my position as an LPN for inability to do my job. SEE EXHIBITS 35-38. Apparently this was the third time she had discussed this with Ms. Colon. SEE EXHIBITS 25-38, and stated my performance has declined. I didn't get a negative work evaluation until now. She also stated she was doing it because my condition caused the removal of one of my essential job responsibilities. This was not true. On April 17, 2020, I received a note from Dr. Sarzier stating I need to have surgery. It was cancelled in March due to Covid 19 and has been rescheduled for May 2020. He was sure that I would have a good recovery and could fulfill the duties of my job SEE EXHIBITS 46-47. After giving Major Kowalski a copy, I was given a headset. The headset was one of the items listed in the ergonomic assessment.  SSG didn't feel that I needed it initially because I was not on the phone a lot, but shortly after we discussed it, our patient care changed to telehealth, so a headset was needed now. Due to me using my Left hand most of the time, it was worse than my right and became a priority.

When I began to talk to Ms. Bell about getting the time off for my surgery, she stated she could not approve it until she had the documentation she needed. SEE EXHIBITS 104-107 This began to be very overwhelming. Between Ms. Bell and Ms. Colon, I felt there was no help for me. The stress and pressure

became so overwhelming that I attempted to email Colonel Michelle Munroe, as she was the Commander at that time, she was also leaving so I don't know if she received the email. SEE EXHIBITS 104-107 Also, I realized they changed the SMIME with my email so the only people that could see my emails would be Ms. Bell and Ms. Colon. I figured this out because I tried to email Major Kowalski a copy of my excuse from Dr. Sarzier on April 17, 2020, but it was locked so he couldn't read it. I had to give him a copy by hand. Major Kowalski agreed with Ms. Bell to terminate me under the guise of "Medical Termination". It was very strategic. My surgery was scheduled for May 8, 2020, I was going to be out until May 21, 2020. Major Kowalski came to me on May 20, 2020, and told me the news. He stated my last day would be Friday May 22, 2020; but I need to get your CAC today. I said so what your saying is, you're terminating me today. He just looked at me. I stated I can't work without my CAC, so what you're telling me is that today is my last day. He stated "Aren't you going to be on leave tomorrow." I replied yes for a half day. He said well, just use your leave time for Thursday and Friday. I cleaned out my office and Mrs. Farris escorted me out.

Melanie Bell had her own agenda, and with the assistance of Carolyn Colon, she was able to make it happen. My goal was to work for at least 10 years and retire; but this was cut short. I complied with every policy these ladies used against me. I brought in my medical documentation to my supervisor who's a Nurse, and when I tell her what is wrong with me, she says "I don't know what's wrong with you." It was evident to me that she had her own agenda, she used her status to manipulate this situation to work out the way she wanted it too.